IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


JOHN EDWARD FORTE,                    §
                                      §
            Petitioner,               §
                                      §
v.                                    §     CIVIL ACTION NO. H-04-3816
                                      §     (Criminal No. H-00-531-01)
                                      §
UNITED STATES OF AMERICA,             §
                                      §
            Respondent.               §



**MEMORANDUM OPINION AND ORDER**

Petitioner, John Edward Forte, has filed an Amended Motion
Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by
a Person in Federal Custody (Docket Entry No. 374 in Crim. No. H-
00-531-01).  Pending before the court is the Government's Motion to
Dismiss, or in the Alternative, Motion for Summary Judgment (Docket
Entry No. 397 in Crim. No. H-00-531-01; Docket Entry No. 7 in C.A.
No. H-04-3816).  For the reasons discussed below, the court will
grant the government's motion.


**I.   Factual and Procedural Background**

On September 6, 2001, a federal jury convicted petitioner John
Forte of possession with intent to distribute five kilograms or
more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(A)(ii).   The  jury  acquitted  him  of  a  related  conspiracy
charge.     Petitioner   is   now   serving   a   168-month   term   of
imprisonment.

Petitioner  was  arrested  on  July  13,  2000,  in  Newark,  New
Jersey,  after  he  took  possession  of  two  suitcases  containing
cocaine  in  liquid  form.   The  cocaine  was  concealed  in  the  suitcases
inside   freezer   packs   stored   in   collapsible   coolers.     Law
enforcement  officers  had  discovered  the  cocaine  in  a  search  of  the
suitcases  the  previous  day  at  a  Houston,  Texas,  airport.   The  two
women  carrying  the  luggage,  Angela  Gegg  and  Marissa  Laken,  agreed
to  participate  in  a  controlled  delivery  of  the  bags  to  petitioner,
whom  Gegg  identified  as  the  intended  recipient.   Law  enforcement
officers  recorded  a  series  of  conversations  between  Gegg  and
petitioner  and  accompanied  the  women  on  their  flight  to  Newark.
After  his  arrest  petitioner  waived  his  right  to  remain  silent  and
indicated  during  questioning  that  he  did  not  know  the  contents  of
the  suitcases.

At  trial  the  government  contended  that  petitioner  was  engaged
in  a  drug  distribution  operation  with  an  experienced  drug  dealer,
Chris  Thompson.   Petitioner's  role  was  to  provide  Thompson  with
female   couriers   to   transport   the   liquid   cocaine   across
international   boundaries   and   within   the   United   States.     The
government  presented  evidence  of  several  prior  trips  in  which  women
provided  by  petitioner  moved  drugs  or  money  for  Thompson.   On  the

-2-

particular trip leading to petitioner's arrest, Gegg and Laken were to carry the suitcases containing the freezer packs of cocaine from south Texas to New York.   Petitioner would receive the bags and then transfer them to Thompson.   Petitioner contended that he was unaware the bags contained cocaine and testified that he believed the couriers he supplied to Thompson transported money, not drugs.

Petitioner's conviction and sentence were affirmed on appeal by the Fifth Circuit,[1] and his petition for writ of certiorari was denied by the Supreme Court on October 6, 2003, Forte v. United States, 124 S.Ct. 300 (2003).   He filed his original § 2255 motion on October 5, 2004 (Docket Entry No. 1 in C.A. No. H-04-3816), and the present, amended § 2255 motion on October 21, 2004 (Docket Entry No. 374 in Crim. No. H-00-531-01).   He raises the following grounds for relief:

> (1) Ineffective assistance of trial counsel for failure to introduce evidence of petitioner's standing to contest federal agents' search of the women's luggage;
>
> (2) Ineffective assistance of trial counsel for failure to object to government questioning about petitioner's post-arrest silence;
>
> (3) Ineffective assistance of trial counsel for failure to move for a directed verdict;
>
> (4) Ineffective assistance of counsel cumulatively;
>
> (5) Denial of a jury determination as to whether petitioner had a leadership or management role in the offense, a factor that affected his sentence;

---

[1] United States v. John Forte, No. 01-21216 (5th Cir. Apr. 30, 2003).

-3-

(6) Ineffective assistance of trial counsel for failure to object that the leadership/management role should be determined according to a reasonable doubt standard;

(7) Government misconduct in presenting false testimony to the grand jury;

(8) Disproportionately harsh sentence compared to sentences of other similarly-situated offenders.

Petitioner has filed a memorandum of law in support of his § 2255 motion (Docket Entry No. 378 in Crim. No. 00-531-01), a supplement to that memorandum (Docket Entry No. 386 in Crim. No. 00-531-01; Docket Entry No. 3 in C.A. No. H-04-3816), and a response to the government's answer and motion to dismiss, or in the alternative, motion for summary judgment (Docket Entry No. 398 in Crim. No. 00-531-01; Docket Entry No. 10 in C.A. No. H-04-3816).

## II.  **Standard of Review**

28 U.S.C. § 2255 provides that a "prisoner in custody under sentence of a court established by Act of Congress" "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on grounds that (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is "otherwise subject to collateral attack."  Under § 2255 the court "shall vacate and set the judgment aside and shall

-4-

discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate" if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. In sum, § 2255 is a "'post-conviction remedy to test the legality of [a federal prisoner's] detention.'" United States v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004) (quoting Kuhn v. United States, 432 F.2d 82, 83 (5th Cir. 1970)).

The Supreme Court has made clear that a collateral challenge does not "do service for an appeal" and that a § 2255 petitioner "must clear a significantly higher hurdle than would exist on direct appeal" in order to obtain relief. United States v. Frady, 102 S.Ct. 1584, 1593 (1982). Accordingly, review of convictions under § 2255 is limited. A § 2255 petitioner must present either (1) constitutional or jurisdictional questions, which cannot be raised for the first time on collateral review without a showing of cause for the default and resulting prejudice, or (2) errors that could not have been raised on direct appeal and that, if condoned, would result in a "complete miscarriage of justice." United States v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998). Non-constitutional claims that could have been raised on direct appeal,

-5-

but were not, may not be asserted in a § 2255 motion.  <u>See</u> <u>United</u> <u>States v. Vaughn</u>, 955 F.2d 367, 368 (5th Cir. 1992).  Similarly, issues that were raised but rejected on direct appeal are barred from consideration on collateral review.  <u>See</u> <u>United States v. Webster</u>, 392 F.3d 787, 791 (5th Cir. 2004).

### III.  <u>Analysis</u>

### A. Ineffective Assistance of Counsel

In five of eight claims for relief under § 2255, petitioner argues that trial counsel provided ineffective assistance.[2]  To succeed in overturning his conviction on this basis petitioner must show that counsel's performance was both deficient and prejudicial.  <u>Strickland v. Washington</u>, 104 S.Ct. 2052, 2064 (1984).

An attorney is considered deficient if he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id.</u>  This means the petitioner must show his attorney's performance was "below an objective standard of reasonableness" assessed in terms of "prevailing professional norms."  <u>Id.</u> at 2064, 2065.

The Supreme Court, out of concern for the "constitutionally

---

[2]Amended Motion Under 28 USC § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Amended Motion Under § 2255"), Docket Entry No. 374 in Crim. No. 00-531-01, pp. 5-6(a).

protected independence of counsel," mandates that "[j]udicial scrutiny of counsel's performance must be highly deferential." <u>Id.</u> at 2065. Therefore, courts are not to exploit the benefits of hindsight in these inquiries, and the petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," <u>id.</u> at 2065-66.

To establish ineffective assistance of counsel the petitioner must also show that he was actually prejudiced. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." <u>Id.</u> at 2066. Thus, the petitioner must show not merely that the errors had "some conceivable effect" on the outcome but that they were so significant reliance on the outcome cannot be justified. <u>Id.</u> at 2067. There must be a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 2068.


1. <u>Failure to Raise Standing to Complain of Illegal Search and Seizure</u>

In his first ground petitioner argues that trial counsel rendered ineffective assistance for failing to "introduce evidence of standing to raise a Fourth Amendment claim which would have been successful at trial and appeal if it had been adequately

preserved."[3]   Petitioner complains that although counsel was "invited to put on evidence" of his standing to protest the search of the women's luggage in Houston,[4] counsel did not have him submit an affidavit or actually testify and did not subpoena Angela Gegg to testify.[5]   Petitioner contends there is "ample evidence of standing" and even suggests the government conceded the issue at trial and on appeal.[6]

Petitioner litigated and lost the standing issue both before trial and on direct appeal.  In an affidavit cited by petitioner, trial counsel Zenia Gilg recalls a pre-trial motion to suppress (petitioner joined co-defendant Marissa Laken's motion to suppress)[7] in which she argued that petitioner had "standing to contest the violation of his Fourth Amendment rights through a DEA's search and seizure of the luggage" containing the cocaine.[8]

---

[3]Id. at 5.

[4]Memorandum of Law in Support of Amended Motion to Vacate, Set Aside or Correct Sentence and Conviction Under 28 U.S.C. § 2255 ("Memorandum of Law"), Docket Entry No. 378 in Crim. No. 00-531-01, p. 3.

[5]Id. at 3-4; Amended Motion Under § 2255, Docket Entry No. 374 in Crim. No. 00-531-01, p. 5.

[6]Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01, pp. 4, 6.  See generally id. at 4-14, 20-22.

[7]United States v. John Forte, No. 01-21216, at 6 (5th Cir. Apr. 30, 2003).

[8]Affidavit of Zenia Gilg, Exhibit 3, attached to Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01.

The Fifth Circuit characterized petitioner's motion as an "extremely comprehensive and fact-intensive motion, with supporting documents and legal authority."[9]

At the suppression hearing this court ruled that petitioner's motion papers did not make a *prima facie* showing of standing and thus petitioner could not challenge the legality of the search unless he planned to present "some evidence to show that he has a possessory interest or some other basis for standing."[10]  Counsel indicated that petitioner would not present evidence at the hearing but asked the court for leave to present evidence of petitioner's possessory interest in the luggage -- "if there is evidence" -- on a future date.[11]  The court replied that it was not prepared to grant the request and would instead wait to "see what [petitioner] file[s] and what [his] interest is."[12]  Trial counsel did not thereafter attempt to present evidence of standing.[13]  In her affidavit Gilg states that she had "no strategic reasons" for not

---

[9]United States v. John Forte, No. 01-21216, at 6 (5th Cir. Apr. 30, 2003).

[10]9 Record on Appeal ("RA") 9-10.

[11]9 RA 11.

[12]9 RA 12.

[13]Affidavit of Zenia Gilg, Exhibit 3, attached to Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01.

introducing any new evidence.[14]  In a de novo review of this court's ruling, the Fifth Circuit agreed that petitioner lacked standing: he had neither demonstrated a legitimate expectation of privacy nor shown that society would recognize that expectation as reasonable.[15]

While petitioner suggests trial counsel was deficient in failing to "put on evidence of standing,"[16] the amended § 2255 motion and supporting memorandum do not identify any new or additional evidence that might have compelled a different ruling on the issue.  Petitioner notes in the § 2255 motion that he "directed" the women as they transported the luggage, he did not object when the women referred to the bags as his bags, and he took possession of the luggage at the airport.[17]  In the memorandum petitioner emphasizes that he remained in "constant contact" with the women and "controlled and directed the use and movement of the baggage."[18]  He also argues that he was "responsible" for the

---

[14]<u>Id.</u>

[15]<u>United States v. John Forte</u>, No. 01-21216, at 6-13 (5th Cir. Apr. 30, 2003).

[16]Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01, p. 3.

[17]Amended Motion Under § 2255, Docket Entry No. 374 in Crim. No. 00-531-01, p. 5.

[18]Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01, p. 4.  See generally <u>id.</u> at 9-14.

luggage.[19]

But this evidence was before the Fifth Circuit on direct appeal. The Fifth Circuit was aware that petitioner claimed standing because "the suitcases were being delivered to him; he took possesion of them; and he claimed an interest in their contents."[20] The court recalled petitioner's trial testimony that he planned to hold the luggage for Thompson, and it also acknowledged that petitioner relied in part for his standing argument on the telephone calls he placed "checking on the arrival of the suitcases and assuring their safe delivery."[21] None of this evidence persuaded the Fifth Circuit that petitioner had standing to protest the search of the luggage containing the cocaine, and petitioner does not explain in his present motion how any of the facts he presents in support of his standing argument materially differ from the evidence before the Fifth Circuit on appeal.

Petitioner's arguments do not persuade the court that trial counsel's performance fell outside the broad range of reasonable professional assistance, much less that petitioner suffered any prejudice from counsel's supposed deficiency. Plainly, there could be no "strategic reason" in presenting affidavit evidence or

---

[19]Id. at 4.

[20]United States v. John Forte, No. 01-21216, at 10 (5th Cir. Apr. 30, 2003).

[21]Id. at 9-10.

testimony as to facts that would have no effect on the court's ruling.  Petitioner has given the court no reason to doubt that counsel presented as persuasive an argument as possible in the "extremely comprehensive and fact-intensive motion, with supporting documents and legal authority."[22]

Petitioner also argues in his supporting memorandum that the government "conceded" the standing issue "at trial and on appeal" (i.e., after the court's ruling on the pre-trial motion to suppress) by, for example, presenting evidence that the luggage was intended to be delivered to petitioner and that petitioner directed the women's movements with the luggage.[23]   The Fifth Circuit expressly declined to consider this argument because petitioner had raised it for the first time only in his reply brief.[24]

Although petitioner is unclear how the supposed concession bears on trial counsel's performance, this court interprets him to suggest that counsel should have urged the court to reconsider its standing ruling once the government "waived" the issue.  But this argument fails because the court is not convinced that the government's evidence is inconsistent with the trial court's ruling

---

[22]<u>Id.</u> at 6.

[23]Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01, pp. 6, 6-9.

[24]<u>United States v. John Forte</u>, No. 01-21216, at 10-11 (5th Cir. Apr. 30, 2003).

against standing and the Fifth Circuit's approval of that ruling on de novo review.   Again, the Fifth Circuit was aware that the suitcases were intended for petitioner and that he instructed the women to avoid detection by law enforcement.[25]   Furthermore, petitioner's comparison to <u>Steagald v. United States</u>, 101 S.Ct. 1642 (1981), is inapt.[26]   In <u>Steagald</u> the government attempted to question whether the petitioner had a reasonable expectation of privacy in a particular house after earlier representing that the house was the petitioner's residence and was occupied by him.   <u>Id.</u> at 1646.   In the instant case the government takes no such diametrically opposite positions: petitioner's directing of the women and his intended receipt of the bags was not sufficient to confer standing on him to protest the search.   The government did not concede standing.


2.   <u>Failure to Preserve Doyle Issues</u>

Petitioner also complains that trial counsel, for "no strategic reason," did not object at trial to the government's reference "in questions and argument" to his post-arrest silence.[27] Petitioner argues that the introduction of his post-arrest silence

---

[25]<u>See</u> <u>id.</u>

[26]See Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01, pp. 7, 9.

[27]Amended Motion Under § 2255, Docket Entry No. 374 in Crim. No. 00-531-01, p. 5.

was error and that "[h]ad the evidence been excluded from the jury and not subject to plain error [review] on appeal, the results of the proceedings would have been different."[28]  In the memorandum of law petitioner identifies as objectionable three particular lines of questioning by government counsel during cross-examination of him:[29]  Regarding petitioner's post-arrest interviews government counsel asked (1) "You didn't say, 'Whoa, possession of cocaine?  There's clearly been some mistake.  I thought it was money,' did you?"[30] (2) "And you heard Officer Pouncy ask you how you got involved in the drug business, and you didn't say 'Drug business?  I'm not involved in the drug business,' did you?"[31] and (3) "You didn't say to Officer Pouncy when she asked you how you got involved in this, 'Hey, hey, wait a minute.  I thought this was

---

[28]Id.

[29]See Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01, pp. 24, 29-30.  Petitioner also argues that trial counsel failed to object to the prosecutor's reference in closing arguments to petitioner's silence after arrest.  Id. at p. 23. The court reviewed the transcript of the government's closing argument but did not, contrary to petitioner's representation, find any mention of petitioner's post-arrest silence therein.  19 RA 22-34, 58-69.  The Fifth Circuit noted that the government did not refer to petitioner's post-arrest silence during closing argument.  United States v. John Forte, No. 01-21216, at 27 (5th Cir. Apr. 30, 2003).

[30]18 RA 256.

[31]18 RA 258.

money.  I didn't know anything about cocaine,' did you?"[32]

On appeal petitioner argued that these references to his post-arrest silence violated his rights under <u>Doyle v. Ohio</u>, 96 S.Ct. 2240 (1976).  In <u>Doyle</u>, the Supreme Court held that a prosecutor could not, consistent with due process, "seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest." <u>Id.</u> at 2241.  Because counsel had not objected to the government's questioning, the Fifth Circuit reviewed petitioner's <u>Doyle</u>-error claim for "plain error."[33]  The court concluded that government counsel's questioning did not constitute "clear or obvious error that affected [petitioner's] substantial rights."[34]

As the Fifth Circuit noted in its review of the issue, there are permissible uses of post-arrest silence consistent with <u>Doyle</u>. For instance, in <u>Anderson v. Charles</u>, 100 S.Ct. 2180 (1980), the Court clarified that

> *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances.  But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements.  Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after

---

[32]<u>Id.</u>

[33]<u>United States v. John Forte</u>, No. 01-21216, at 22-27 (5th Cir. Apr. 30, 2003).

[34]<u>Id.</u> at 25, 26-27.

receiving *Miranda* warnings has not been induced to remain silent.  As to the subject matter of his statements, the defendant has not remained silent at all.

Id. at 2182.  Anderson concerned a prosecutor's questioning of a murder defendant as to why he "didn't come forward and tell anybody at the time you were arrested, where you got [the victim's] car?"  Id. at 2181.  The defendant had testified on direct examination that he had taken the car from a parking lot, but, as the prosecutor pointed out, he had told a detective when he was arrested that he had stolen the car from another location.  Id. at 2180-81.  The Court concluded that taken as a whole, the prosecutor's questions were not designed to "draw meaning from silence" but instead to "elicit an explanation for a prior inconsistent statement."  Id. at 2182.

In Pitts v. Anderson, 122 F.3d 275 (5th Cir. 1997), the Fifth Circuit held that "where a defendant's post-arrest statement addresses the same subject matter as his trial testimony and is arguably inconsistent with that testimony, a prosecutor's questions and comments designed to highlight the inconsistency do not violate *Doyle*."  Id. at 282.  Applying this rule, the court concluded that there was no Doyle error in a case where the prosecutor referred to the defendant's failure in his post-arrest statement to include facts supporting the exculpatory story he testified to at trial.  Id.

-16-

The court concludes that the government did not commit _Doyle_ error in the questioning cited by petitioner.  After his arrest petitioner waived his right to remain silent and agreed to answer questions.[35]   Agent Bonnie Assarian testified that she told petitioner the cocaine had been found in the suitcases and he claimed he did not know what was in the luggage.[36]  But on direct examination, petitioner testified that Thompson asked him to provide couriers to transport money,[37] that he "was always under the impression the girls were taking money from point A to point B,"[38] that "[e]very trip was money to my knowledge,"[39] and that at no time did he learn the couriers were transporting cocaine in freezer packs.[40]  Petitioner even suggested that if he had learned about the cocaine, "my involvement or my participation with a person like Chris would have ended immediately."[41]  Thus, government counsel's questions regarding petitioner's failure to state that there was some kind of mistake and that he was under the impression the women

---

[35]17 RA 9-10.

[36]17 RA 12-13.

[37]18 RA 195.

[38]18 RA 201.

[39]18 RA 236.

[40]18 RA 207-208.

[41]18 RA 208.

were carrying money, not cocaine, emphasize the inconsistency in petitioner's positions over time.

Counsel's question regarding petitioner's failure to deny being in the "drug business" is also a permissible inquiry.  At trial Officer Sharon Pouncy testified about a conversation with petitioner after his arrest in which she asked him "about how he got involved in this particular drug business."[42]  Then, in her own words she elaborated: "....And then the next thing I said, 'How did you get involved in this?'  And he kind of looked at me and very soft spoken he said, 'You know, sometime people that are around you are not good for you.'"[43]  Petitioner's statement arguably constituted an admission acknowledging his knowing involvement in Thompson's drug scheme, and government counsel could fairly probe the meaning of his words by seeking clarification that the response was not a denial.

Government counsel is permitted to contrast inconsistencies in petitioner's various statements.  Petitioner contends that Officer Pouncy asked only how he got involved in "this," as distinct from "this drug business," and therefore that his response was consistent with his testimony.[44]  But Pitts requires only an

---

[42]16 RA 291.

[43]16 RA 292.

[44]Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01, p. 27.

*arguable* inconsistency before counsel may attempt to highlight it, see <u>Pitts</u>, 122 F.3d at 282, and here such an inconsistency exists: Officer Pouncy indicated that she had asked petitioner about his involvement in "this particular drug business," and in any event, petitioner's failure to state unambiguously when he undertook to explain his involvement in "this" -- whatever "this" is -- that he was not aware of any wrongdoing conflicts with his repeated and sharp denials of any knowledge of illegal activity at trial.  For the same reason government counsel's question about petitioner's failure to tell Officer Pouncy about his impression that the women were carrying money rather than drugs was also not <u>Doyle</u> error.

Following his arrest petitioner waived his rights and made statements regarding his knowledge of the luggage contents and his connection to the case.  Having made this choice to speak, petitioner cannot now complain about government questioning contrasting those statements with his explanations of the same subject matter at trial.  Certainly, petitioner has no plausible claim that the government induced him to remain silent as to the exculpatory facts he later related at trial.  Since under <u>Doyle</u> government counsel could fairly ask the questions cited by petitioner, petitioner's trial counsel committed no error in not raising objections to them, much less error suggesting his performance fell outside the wide spectrum of reasonable professional assistance.  Moreover, in the absence of error

-19-

petitioner obviously suffered no prejudice from his counsel's failure to object.

But even assuming error, the court is not persuaded petitioner can demonstrate prejudice.  As petitioner notes, the court warned the government outside the presence of the jury to be "awfully careful in final argument about any Doyle error...."[45]  The court advised, "I would stay away from it entirely.  That's the safest thing."[46]  The government did not refer during closing arguments to petitioner's omissions in post-arrest statements.[47]  This is not a situation in which a prosecutor "in his final comment during his closing argument, went beyond permissible impeachment and argued that the jury should infer [the defendant's] guilt directly from his post-arrest silence."  See United States v. Rodriguez, 260 F.3d 416, 421 (5th Cir. 2001).  Because his omissions during post-arrest statements did not occupy a prominent place in the government's case, petitioner cannot demonstrate a reasonable probability that, but for his counsel's failure to object to the questioning, the outcome of his trial would have been different.  See United States v. Garcia-Flores, 246 F.3d 451, 457 (5th Cir. 2001)(stating the similar point (in a review of Doyle error under the plain error

---

[45]18 RA 278.

[46]Id.

[47]See supra note 29.

standard) that "in light of the strength of the government's remaining evidence and the limited context in which the violation occurred, we do not think that failure to correct the error will result in a manifest miscarriage of justice or will affect the fairness, integrity, or public reputation of judicial proceedings").

3.  Failure to Move for a Directed Verdict to Preserve Sufficiency Claim

Petitioner argues that trial counsel was ineffective for failing to move for a directed verdict at the close of the government's case.[48]  Petitioner states that but for the error he would have "prevailed on appeal."[49]  In his supporting memorandum petitioner notes that because of counsel's failure to move for a directed verdict -- an omission not motivated by strategy -- the Fifth Circuit reviewed the record only to assure that it was not devoid of evidence that he knowingly possessed with intent to distribute cocaine.[50]  Petitioner argues at length that had the court instead applied "the less strict standard of de novo review," it would have concluded that the evidence against him was

---

[48]Amended Motion Under § 2255, Docket Entry No. 374 in Crim. No. 00-531-01, p. 5.

[49]Id.

[50]Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01, pp. 32-33.

insufficient to demonstrate he was aware that the women were transporting cocaine.[51]

Ordinarily, the Fifth Circuit "review[s] challenges to the sufficiency of the evidence under a mere rationality standard," affirming a conviction "'if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt.'" United States v. Ramos-Garcia, 184 F.3d 463, 465 (5th Cir. 1999)(quoting United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996). This is a different question than whether the court agrees with the jury's decision. Id. The court "view[s] the evidence in the light most favorable to the jury's verdict without second-guessing the weight or credibility given the evidence by the jury." Id. If it decides that the evidence "'gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innonence,'" the court must reverse the conviction. Id. (quoting Lopez, 74 F.3d at 577). But "'[t]he evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence.'" United States v. Ortega Reyna, 148 F.3d 540, 543 (5th Cir. 1998)(quoting Lopez, 74 F.3d at 577).

---

[51]See id. at 33, 34-46.

On direct review, the Fifth Circuit concluded that "the record is far from devoid of evidence that [petitioner] *knowingly* possessed with intent to distribute cocaine."[52]   The court noted that three witnesses testified that petitioner was aware that cocaine was being transported,[53] and this court's own review of the record confirms that.   Chris Thompson testified that he showed petitioner the freezer packs and explained that the couriers would carry them in coolers and that they could not be detected by dogs or x-rays.[54]   Thompson said that it was important that petitioner knew the couriers would be carrying drugs and that he "made him aware that they would have stuff" -- his slang word for cocaine.[55] Jessica Robinson, recruited by petitioner to be a courier, testified that she called petitioner during a trip to Panama when she realized she was not being asked to carry money but instead a cooler with freezer packs and food.[56]   Petitioner's response was that she should "'use your brain.'"[57]   Robinson testified that she later had a conversation with petitioner in which they discussed

---

[52]United States v. John Forte, No. 01-21216, at 34 (5th Cir. Apr. 30, 2003)(emphasis original).

[53]Id.

[54]15 RA 36-37.

[55]15 RA 42-43.

[56]15 RA 250-52.

[57]15 RA 251-52.

-23-

the freezer packs she had transported.[58]  Robinson said the two had a "silent understanding" that "the stuff" -- the word she used in the conversation -- in the packs was cocaine, and she stated that petitioner told her something to the effect that there was a "chemical process" that made it possible for the cocaine to be extracted from the freezer pack liquid.[59]  Based on this comment about the chemical process, Robinson concluded that the liquid in the packs "was cocaine in packageable form so it couldn't be detected."[60]  Angela Gegg, one of the women involved in the offense leading to petitioner's conviction, testified that when she was asked to be a courier, petitioner explained that her role would be to "carry drugs in a cooler," and he specified the drug was "coke."[61]

As to the particular trip leading to petitioner's arrest, Gegg testified that petitioner initially told her the task was to transport money concealed in VCRs.[62]  When she and Laken arrived in Texas and discovered that they would instead be carrying coolers, Gegg called petitioner and said, "'Don't lie to me....If you want

---

[58]15 RA 253.

[59]15 RA 259-60.

[60]Id.

[61]16 RA 123.

[62]16 RA 155.

us to pick up cocaine, you should have told me, you know, you're picking up the same coolers.  Don't tell me that you're going to send me here for VCRs when you're not.'"[63]  After the women agreed to transport the drugs, petitioner, as he acknowledged in testimony, told Gegg over the phone that they should avoid raising "red flags" that would alert law enforcement.[64]  Later, after learning the women would spend the night at a hotel, petitioner instructed Gegg to put the "ice cream" on ice in the tub.[65]  Jessica Robinson testified that in the context of her trips petitioner had used "ice cream" to refer to "the frozen packages that contained the cocaine."[66]

Petitioner's sufficiency challenge amounts to nothing more than an unpersuasive point-by-point attempt to explain away the foregoing evidence.  To refute the government's case, petitioner cites Thompson's testimony that when Thompson first asked him about providing couriers he did not indicate to petitioner what he needed

---

[63]16 RA 167.

[64]18 RA 254.

[65]18 RA 237.  Additionally, the Fifth Circuit noted that "when Gegg arrived at the airport, she told [petitioner] she was concerned that the 'ice cream' could melt if she took a taxicab to his apartment, and he reassured her it would be fine (recorded conversation)."  United States v. John Forte, No. 01-21216, at 35-36 (5th Cir. Apr. 30, 2003).

[66]16 RA 65.

them to carry.[67]  Petitioner also points out that Thompson "never mentioned cocaine but only showed [him] packaging"[68] and told petitioner he was transporting "stuff."[69]

This argument too casually dismisses Thompson's testimony, mentioned above, that "stuff" referred to the cocaine and that he made petitioner aware the couriers would be carrying "stuff" because he thought it was important petitioner know about the drugs.  Whether Thompson's failure to use the actual word "cocaine" or "drugs" makes this evidence less persuasive is immaterial.  In reviewing for sufficiency, the court does not second-guess the weight given the evidence by the jury.  To the contrary, the evidence is taken in the light most favorable to the verdict.

Petitioner also suggests that he had no idea that Robinson was transporting cocaine.[70]  Apparently in support of this, petitioner recalls Robinson's testimony that petitioner told her she would be transporting money and that she once did bring him cash.[71]  But as noted, Robinson also testified about transporting coolers and freezer packs and about a discussion she had with petitioner

---

[67]Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01, p. 38.

[68]Id.; see also id. at 34, 42.

[69]Id. at 42.

[70]Id. at 39.

[71]Id. at 43.

regarding the drugs concealed therein.   Petitioner dismisses
Robinson's testimony about that discussion:  Robinson was confused;
she may have misinterpreted what petitioner told her; she testified
to what she thought petitioner meant rather than what he actually
said; and she stated that she was "using my own words" to recount
the conversation, so "he apparently never referred to a chemical
process."[72]  But these judgments or inferences are reserved for the
trier of fact; a sufficiency review is not an occasion to re-argue
or re-evaluate the weight and credibility of a particular witness's
testimony.[73]

Petitioner makes a number of other arguments, including: that
"ice cream" refers to money or women;[74] that he "had no prior
convictions of any sort, did not see the items being transported,
was not told that they were drugs" (petitioner is relying on his

---

[72]Id. at 34-35.

[73]Petitioner also tries to discredit Angela Gegg.  He claims
that her testimony was a "recent fabrication" because she stated
that on the day she met petitioner he asked her to transport
cocaine the following day, but when she called him from Texas it
was clear she had been asked to transport money in VCRs.  Id. at
35-36.  Petitioner seems to be mistaken.  Gegg testified that the
first trip she took did involve transporting coolers (containing
freezer packs) from Panama to Mexico.  See 16 RA 121-48.  When
she testified about the Texas trip, she stated that petitioner
told her it involved carrying money in VCRs.  16 RA 155.  After
she and Laken discovered otherwise, in Texas, Gegg called
petitioner and told him he should have been truthful: the trip
was to pick up cocaine.  16 RA 167.

[74]Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-
531-01, p. 36.

own testimony here) but rather "was told it was money";[75] that petitioner was simply relaying Thompson's instructions when he talked about red flags and putting the ice cream on ice;[76] that money is sometimes shipped surreptitiously in sealed plastic containers.[77]  This recitation is unpersuasive.  The jury may have concluded that these explanations offered by the defense were not necessarily incompatible with guilt, or were not persuasive, or both, and petitioner has not convinced the court that such determinations are irrational.  Similarly, the jury obviously disbelieved petitioner's testimony about his knowledge as to what the couriers transported and chose to believe instead at least portions of the testimony of Thompson, Robinson, and Gegg.  But this does not mean the evidence was insufficient: again, it was the jury's province to compare the testimonies and weigh the credibility of the various witnesses and then decide who and what to believe.[78]

The evidence in this case is far more substantial than the

---

[75]Id. at 37.

[76]Id. at 40-41

[77]Id. at 43.

[78]Petitioner also complains of Doyle error again, arguing that it was "plain and harmful error" to invite jurors to infer guilt from his post-arrest silence and request for counsel and that such evidence cannot sustain his conviction.  See id. at 44-46.  This court concluded in § III-A-2 that the government did not commit Doyle error.

-28-

evidence of guilt the Fifth Circuit concluded to be insufficient in
United States v. Stewart, 145 F.3d 273 (5th Cir. 1998) and United
States v. Crain, 33 F.3d 480 (5th Cir. 1994).  Unlike in Stewart,
the government in this case does not rely on just "a few facially
neutral comments" and other purely circumstantial evidence of
limited probative value, like presence and nervousness at the crime
scene, to establish petitioner's mental state.  See Stewart, 145
F.3d at 277-78, 280.  In Crain, the government failed to present
additional circumstantial evidence required by law to prove
constructive possession where there is joint occupancy, and
countervailing evidence suggested the contraband in question
belonged to another person.  Crain, 33 F.3d at 487.  In this case,
the testimony by multiple witnesses that petitioner knew about or
even explained the transport of cocaine in freezer packs and the
evidence regarding Gegg's communications with petitioner during the
Texas trip permitted the jury to conclude beyond a reasonable
doubt, and without having to "'speculate[]'" or pile "'inference
upon inference,'" id. (quoting United States v. Onick, 889 F.2d
1425, 1429 (5th Cir. 1989)), that petitioner knew the women were
carrying cocaine.

Because petitioner has not persuaded the court that he would
have prevailed on his sufficiency claim even had the Fifth Circuit
reviewed it according to the usual standard, he cannot demonstrate
that he suffered any prejudice as a result of trial counsel's

failure to move for a directed verdict.  Likewise trial counsel did not err because a motion for directed verdict, if urged, would have been futile.


4.  Cumulative Ineffective Assistance of Counsel

Petitioner's fourth ground for relief asserts that he was prejudiced by the cumulative effect of trial counsel's errors.[79] He asserts that "had Counsel objected to the admission of inadmissible evidence, put on evidence of Petitioner's standing to complain of the search and seizure of the bags and their contents, and moved for a directed verdict, the outcome of his trial and appeal would have undoubtedly been different."[80]  Because petitioner has shown neither deficiency nor prejudice in the claims of ineffective assistance mentioned above, this argument fails to persuade the court.


B.  Denial of Jury Determination as to Leadership Role

1.  Blakely/Booker Claim

In his § 2255 motion petitioner also cites as error the court's ruling that he had a leadership role in the offense and the

_____

[79]Amended Motion Under § 2255, Docket Entry No. 374 in Crim. No. 00-531-01, p. 6.

[80]Id.

-30-

consequent denial of a "safety valve" adjustment at sentencing.[81] (The "safety valve" is a statutory provision that instructs a trial court to impose a sentence under the federal guidelines "without regard to any statutory minimum sentence" if the defendant meets certain conditions, one of which is that he was not "an organizer, leader, manager, or supervisor of others in the offense." 18 U.S.C. § 3553(f); U.S. SENTENCING GUIDELINES MANUAL § 5C.1.2. Additionally, if the defendant qualifies for application of the safety valve, he receives a reduction in his offense level under the guidelines, resulting in a lower sentence. U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(b)(7). In this case petitioner's offense level was actually increased because of his managerial role. U.S. SENTENCING GUIDELINES MANUAL § 3B1.1(b).) Petitioner argues that the jury instead should have considered the questions in accordance with the reasonable doubt standard.[82]

Petitioner raised and lost on this issue before the Fifth Circuit on direct appeal.[83] The appeals court concluded that "the district court did not err, much less commit plain error," in determining the managerial role itself according to the preponderance standard, because circuit precedent held that

---

[81]Id. at 6a.

[82]Id.

[83]United States v. John Forte, No. 01-21216, at 36-38 (5th Cir. Apr. 30, 2003).

-31-

"[f]actual determinations by the district court that simply dictate a sentence within the statutorily allowed range are not called into question by" the Supreme Court's decision in <u>Apprendi v. New Jersey</u>, 120 S.Ct. 2348 (2000).[84]   Petitioner had relied on <u>Apprendi</u>'s holding that according to due process and the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   120 S.Ct. at 2362-63.   As the Fifth Circuit stated on direct review, the statutory maximum for petitioner's offense is life imprisonment.[85]

In the brief supporting his § 2255 motion, petitioner argues he is entitled to relief under the Supreme Court's decision in <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004).[86]   There the Court clarified, in the context of a state sentencing procedure, that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."   <u>Id.</u> at 2537 (emphasis original).   When the Supreme Court thereafter applied this analysis to the federal sentencing guidelines in

---

[84]<u>Id.</u> at 37.

[85]<u>Id.</u> at 38.

[86]Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01, pp. 49, 52-60.

<u>United States v. Booker</u>, 125 S.Ct. 738 (2005), petitioner filed a supplement to his brief in which he argues that "his sentence based on factors not decided by a jury or admitted by him presents a Sixth Amendment violation."[87]

Petitioner's argument lacks merit.  The Supreme Court has not declared that the rules of constitutional law announced in <u>Blakely</u> and <u>Booker</u> are made retroactive to cases on collateral review.  <u>See</u> <u>Varela v. United States</u>, 400 F.3d 864, 868 (11th Cir. 2005); <u>McReynolds v. United States</u>, 397 F.3d 479, 480 (7th Cir. 2005); <u>Green v. United States</u>, 397 F.3d 101 (2d Cir. 2005); <u>In re Dean</u>, 375 F.3d 1287 (11th Cir. 2004).  Both <u>Blakely</u> (June 24, 2004) and <u>Booker</u> (Jan. 12, 2005) were decided after petitioner's conviction became final on Oct. 6, 2003, when the Supreme Court denied his petition for writ of certiorari, <u>Forte v. United States</u>, 124 S.Ct. 300 (2003).  Therefore, the <u>Blakely</u> and <u>Booker</u> holdings do not apply to petitioner's case.

In his brief supporting the § 2255 motion petitioner asserts that this court must apply <u>Blakely</u> retroactively because his case was pending on direct review when he raised his <u>Blakely</u> claim.[88] (Realizing <u>Blakely</u> post-dates his direct appeal, petitioner

---

[87]Supplement to Memorandum of Law in Support of Amended Motion to Vacate, Set Aside or Correct Sentence and Conviction Under 28 U.S.C. § 2255, Docket Entry No. 386 in Crim. No. 00-531-01, p. 12.

[88]Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01, pp. 52-53.

suggests his original <u>Apprendi</u> argument urged on direct review qualifies as the <u>Blakely</u> claim).[89]  This confused argument is not supported even by the case petitioner cites as requiring the court to apply <u>Blakely</u> retroactively.[90]  In <u>Johnson v. United States</u>, 117 S.Ct. 1544 (1997), the Supreme Court stated that a "'new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases...pending on direct review....'"  <u>Id.</u> at 1549 (quoting <u>Griffith v. Kentucky</u>, 107 S.Ct. 708 (1987)).  Simply put, this is collateral, not direct, review.  Moreover, petitioner's case was not pending on direct review when <u>Blakely</u> (and <u>Booker</u>, for that matter) established new rules of constitutional law superseding the prior circuit precedent; petitioner may have raised on direct review what would later be styled a "<u>Blakely</u> claim," but <u>Blakely</u> was not then the law.  Petitioner concedes as much.[91]

    In his response to the government, petitioner argues that the court need not assess retroactivity in connection with <u>Booker</u>, because he "raised these claims at trial and on appeal."[92]

---

[89]See <u>id.</u>

[90]See <u>id.</u>

[91]"At the time of [petitioner's] sentencing, an unbroken line of Fifth Circuit cases (and cases from other circuits) held that the *Apprendi* principles do not apply to guidelines calculations, as long as the sentence does not exceed the maximum possible sentence for the offense under any set of facts."  <u>Id.</u> at 51.

[92]Response to Government's Answer to Petitioner's 1) Amended Section 2255 Motion; 2) Supplement to Amended Section 2255

Petitioner appears to suggest that failing to apply <u>Booker</u> under these circumstances is equivalent to applying the law of the case doctrine when there has been an intervening change in the law.[93] He cites <u>Davis v. United States</u>, 94 S.Ct. 2298 (1974), for the proposition that a § 2255 applicant may be entitled to a new hearing on a legal issue decided on direct review if new law has since been made.[94]  <u>Id.</u> at 2303.

Petitioner's argument again fails to persuade this court.  In <u>Davis</u>, the Supreme Court ruled only that the law of the case doctrine did not preclude the petitioner from securing relief under § 2255 on the basis of an intervening change in the law.  <u>Id.</u>  It did not hold that such a change *automatically* entitled the petitioner to relief on collateral review.  In fact, the Court specifically stated that it expressed no view on the merits of the petitioner's claim, including whether a decision on which the petitioner ultimately relied -- which was actually considered on remand from direct review -- had retroactive effect.  <u>See</u> <u>id.</u> at 2303 n.12, 2305.  Here, consistent with <u>Davis</u>, the court does not apply law of the case to prevent petitioner from raising this

---

Motion; 3) Intervening Authorities, Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, and Brief, Docket Entry No. 398 in Crim. No. 00-531-01, p. 3.

[93]<u>See</u> <u>id.</u> at 3-6.

[94]<u>Id.</u> at 3.

claim.  Petitioner is not entitled to relief, however, because the decision on which he relies, <u>Booker</u>, was announced after his conviction became final and has not been made retroactive to apply to cases on collateral review.

> 2.  <u>Ineffective Assistance of Counsel for Failure to Object to Court Determining Leadership Role and Denying "Safety Valve"</u>

In this ground for relief petitioner argues that counsel was ineffective for not objecting to the court determining the issues he argues should have been submitted to the jury under <u>Booker</u>.[95] This claim lacks merit.  As the Fifth Circuit indicated on direct review, at the time of sentencing the applicable law authorized the district court to make factual findings that dictate a sentence within the statutory range, which in petitioner's case extended to a maximum of life imprisonment.[96]  Counsel's failure to anticipate the Supreme Court's holding in <u>Booker</u> -- and, therefore, to argue specifically in <u>Booker</u> terms -- was not unreasonable.  "With respect to the reasonableness of counsel's conduct, '[only] in a rare case can an attorney's performance be considered unreasonable under prevailing professional standards when she does not make an [argument] which could not be sustained on the basis of the

---

[95]Amended Motion Under § 2255, Docket Entry No. 374 in Crim. No. 00-531-01, p. 6a.

[96]<u>United States v. John Forte</u>, No. 01-21216, at 36-38 (5th Cir. Apr. 30, 2003).

existing law as there is no general duty on the part of defense counsel to anticipate changes in the law.'"  _United States v. Davies_, 394 F.3d 182, 189 (3d Cir. 2005)(quoting _Government of Virgin Islands v. Forte_, 865 F.2d 59, 62 (3d Cir. 1989)).

Nor can petitioner show that he suffered prejudice. Petitioner complains that counsel did not "preserve error in light of '_Apprendi_,'."[97]  But because there was no legal basis for petitioner's _Apprendi_ claim under the then-prevailing precedent, the Fifth Circuit concluded that the district court "did not err, much less commit plain error, in applying the preponderance standard rather than requiring the jury to decide the leadership issue under the reasonable doubt standard."[98]  Even petitioner acknowledges that an objection based on the denial of jury determinations as to his role in the offense and, consequently, application of the safety valve would have been futile.[99]

## C.  Governmental Misconduct Violating Due Process

In his seventh claim for relief petitioner alleges that the government violated his due process rights by knowingly presenting

---

[97]Amended Motion Under § 2255, Docket Entry No. 374 in Crim. No. 00-531-01, p. 6a.

[98]_United States v. John Forte_, No. 01-21216, at 37 (5th Cir. Apr. 30, 2003).

[99]Amended Motion Under § 2255, Docket Entry No. 374 in Crim. No. 00-531-01, p. 6a.

perjured testimony to the grand jury and withholding witness statements from the defense.[100]   Petitioner complains of a DEA agent's testimony before the grand jury that Laken knew she was transporting cocaine.[101]   He also labels as untrue the same agent's testimony on a second occasion that Laken was involved in the scheme to transport cocaine since June, 2000, and that Laken was instructed how to handle the freezer packs.[102]   As for the other due process claim, petitioner contends that the government took notes during its repeated interviews of witnesses but did not provide the defense with any statements for use during trial.[103]

Petitioner has presented and lost these arguments on previous occasions.   He joined co-defendant Laken's motion to dismiss the indictment based on the claims of perjury, but this court denied the motion.[104]   Petitioner raised the issue on direct review, but the Fifth Circuit concluded that the agent had not presented false testimony.[105]   The court was persuaded that she had satisfactorily

_____

[100]<u>Id.</u>

[101]Memorandum of Law, Docket Entry No. 378 in Crim. No. 00-531-01, p. 61

[102]<u>Id.</u> at 62.

[103]<u>Id.</u> at 61.

[104]<u>United States v. John Forte</u>, No. 01-21216, at 13 (5th Cir. Apr. 30, 2003).

[105]<u>Id.</u> at 13-15.

clarified to the grand jury that neither Gegg nor Laken admitted to knowingly transporting cocaine, that trial testimony supported the statement that Laken was involved in the scheme in June, 2000, and that petitioner's instructions to Gegg regarding the freezer packs were intended for both women.[106]

As for the witness statements, petitioner made repeated discovery requests prior to and during trial.[107]  At one hearing, the defense alleged that the government was purposefully not preparing reports of its interviews of witnesses.[108]  (The government stated that it had debriefed Chris Thompson and taken notes but that Thompson had not made any Jencks Act statements).[109] This court ruled that the government did not have to produce reports of witness interviews and later concluded after hearing trial testimony and completing an *in camera* review that the government's interview notes did not contain discoverable material.[110]  On direct review, the Fifth Circuit determined it could not address whether the notes were subject to discovery

---

[106]<u>Id.</u> at 14-15.

[107]<u>Id.</u> at 19-20.

[108]<u>Id.</u> at 19.

[109]<u>Id.</u>

[110]<u>Id.</u> at 19-20.

because petitioner had failed to include them in the record.[111]

Petitioner's allegations of governmental misconduct in the instant motion raise no issues not already litigated at trial and on direct appeal.  Because issues that were raised but rejected on direct appeal are barred from consideration on collateral review, see United States v. Webster, 392 F.3d at 791, and petitioner's claim for relief fails.[112]

## D.  Disproportionately Harsher and Inequitable Sentence

In his eighth and final claim for relief petitioner argues that his sentence of 168-months' imprisonment was "much too harsh and inequitable" when compared with the sentences of "similarly situated participants."[113]   Petitioner claims that the court punished him for "exercising his right to go [to] trial" and that the sentence is particularly harsh given that, according to the government's argument and the trial and appellate courts' findings on the standing issue, he was just a "temporary transporter" of the drugs.[114]

-----

[111]Id. at 22.

[112]The court notes that petitioner does not claim he was denied the opportunity to argue his misconduct claims in full.

[113]Amended Motion Under § 2255, Docket Entry No. 374 in Crim. No. 00-531-01, p. 6b.

[114]Id.

At sentencing this court considered departing downward from the guideline range (168 to 210 months) and imposing the 120-month mandatory minimum.[115]   The court stated it was concerned about the disparity in sentencing between petitioner and the couriers.[116]   The court decided against departing, however, after the government argued that

> that disparity is a direct result of a decision that [petitioner] made....he made a conscious choice to go to trial, he was given the opportunity just like Mr. Thompson, Ms. Laken and Ms. Gegg.  He could have cooperated, he could have earned a 5K.  He chose not to do all those things; and as a result, yes, I believe that the onus of the disparity is on [petitioner], not the government.[117]

On direct appeal the Fifth Circuit concluded it lacked jurisdiction to review a district court's decision not to depart unless the court believed it lacked authority to do so.[118]

Petitioner's sentence was not punishment for his decision to go to trial.  In fact, the court imposed a sentence at the low end of the guideline range.  Cf. Bertrand v. United States, 467 F.2d 901, 902 (5th Cir. 1972)(vacating a sentence where it was "apparent from the transcript of the sentencing hearing that the petitioner's

---

[115]22 RA 10.

[116]Id.

[117]22 RA 13.

[118]United States v. John Forte, No. 01-21216, at 42-43 (5th Cir. Apr. 30, 2003).

lack of 'cooperation' irked the trial judge and induced him to impose the maximum sentence for the crime"). As for the comparison to other participants in the scheme -- Gegg and Laken -- the court stated (even as it mentioned its concern about the issue) that the disparity in sentencing owed to "a number of factors: [Petitioner's] role in the offense, the fact they pled guilty and agreed to cooperate."[119]  The court found that petitioner was "an integral manager" of "a sophisticated drug distribution scheme," "and he did it for the money over quite a long period of time....He was a professional drug dealer in it for the money."[120]  Thus, while petitioner may have been a "temporary transporter" in terms of his actual possession of the drugs in this case, he was much more than just another courier.

Under § 5K1.1 of the federal sentencing guidelines the court was permitted to depart from the guidelines "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S. Sentencing Guidelines Manuel § 5K1.1.  The government did not file a § 5K1.1 motion in this case, and petitioner does not claim that he provided the government any kind of "substantial assistance."  Instead, he chose to forego

---

[119]22 RA 10.

[120]22 RA 6.

the benefits of a possible § 5K1.1 reduction and proceeded to trial. That other defendants made other choices and earned § 5K1.1 reductions shows that as to these other participants, petitioner was *not* similarly situated. The court's (and the government's) mention of the cooperation of these other defendants underscored that the disparity in sentences was not without reason and thus did not justify departing from the guideline range. The Court's remarks were not evidence that the court intended to punish petitioner for going to trial.

## IV. <u>Conclusions and Order</u>

For the reasons discussed above, the court concludes that petitioner's claims for relief under 28 U.S.C. § 2255 are without merit. Accordingly, the Government's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Docket Entry No. 397 in Crim. No. H-00-531-01; Docket Entry No. 7 in C.A. No. H-04-3816) is **GRANTED**. Petitioner's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket Entry No. 374 in Crim. No. H-00-531-01) is **DENIED**.

**SIGNED** at Houston, Texas, on this 27th day of July, 2005.


_____

SIM LAKE
UNITED STATES DISTRICT JUDGE

-43-